SO ORDERED: April 22, 2024.



Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CHRISTOPHER ALLEN GRAY ) | CASE NO. 23-02762-RLM-13 |
| ) | |
| Debtor ) | |
| ) | |

### ORDER ON DEBTOR'S MOTION FOR DETERMINATION

The Debtor filed his *Motion for Determination as to the Scope of the Police and Regulatory Power Exception to the Automatic Stay* (Dkt. 26) (the "Motion") requesting a determination of whether the issuance of a *subpoena duces tecum* by the Indiana Securities Commissioner ("Commissioner") on behalf of the Secretary of State of Indiana ("State") seeking the production of documents violates the automatic stay or whether it is an exercise of the State's police and regulatory powers which is excepted from the automatic stay under §362(b)(4) [1]   For the

---

[1] The Motion, along with the State's response to the Motion, were heard on February 6, 2024. At the conclusion of the hearing, the Court gave the debtor 30 days to file a reply to the State's response, and gave the State 21 days thereafter to file a surreply. The debtor's reply and the State's surreply were filed on March 7th and March 28th respectively.

1

reasons stated herein, the Court finds that the State's actions in issuing the subpoena and requesting production of documents are excepted from the stay under §362(b)(4).

## *Background*

The Debtor was a broker licensed to sell securities. He owned and operated "Physicians Wealth Management"("PWM") which he had registered as both a corporation in 2014 and a limited liability company in 2015. PWM – as its name implied – provided wealth management services to physicians. The Debtor allowed his license to lapse in April 2022 and currently is not working as a financial advisor in any capacity. The Debtor filed his chapter 13 case on June 28, 2023. His chapter 13 plan has been confirmed and he remains current on plan payments.

A few months after the Debtor filed his chapter 13 case, the State in September 2023 issued subpoenas requiring the Debtor to produce documents and to appear for an examination regarding potential violations of the Indiana Uniform Securities Act ("IUSA") but withdrew those subpoenas after Debtor's counsel contacted it and alleged that the police and regulatory power exception to the stay did not apply. After researching the issue, the State was satisfied that the exception did apply and reissued the *subpoena dues tecum* which sought the production of documents concerning the finances, investment transactions and clients of PWM and other entities in which the Debtor had been involved. The letter from the Securities enforcement investigator that accompanied the subpoena provided that "[t]his inquiry should not be construed as an indication by the Indiana Securities Division that any violations of law have occurred or as a reflection upon the merits of the companies or securities involved or upon any person who effected transactions with respect to such companies or securities." (Response, Dkt, 33-4).

The filing of the Motion followed on January 15, 2024. The Motion and the Debtor's response to the State's objection state that the Debtor would consent to an injunction prohibiting him from selling securities, operating a business, and

working as a financial advisor in the future.   (Motion, Dkt. 26, ¶19; Response, Dkt. 41, p.1).

## Discussion

### The §362(b)(4)  Police and Regulatory Exception

The filing of a voluntary or involuntary petition operates as a stay of the commencement or continuation of actions or proceedings under §362(a).  The stay is self- executing and preserves the relative pre-petition position and rights of the parties and provides an orderly liquidation of the debtor's assets.  *In re Aearo Technologies, LLC*, 642 B.R. 891, 903 (Bankr. S. D . Ind. 2022). Section 362(b) contains twenty-nine exceptions, among which is §362(b)(4) which provides in part, that the filing of a petition does not operate as a stay:

> …of the commencement or continuation of an action or proceeding by a governmental unit …to enforce such governmental unit's …police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's … police or regulatory power.

This exception has been applied where state laws affecting health, welfare, morals, and safety are enforced, but not to regulatory laws that "directly conflict with the control of the res or property by the bankruptcy court." *In re Cash Currency Exch., Inc.* 762 F.2d 542, 555 (7th Cir. 1985) (quoting *In re Missouri*, 647 F.2d 768,776 (8th Cir. 1981); *In re Fulton*, 926 F.3d 916, 929 (7th Cir. 2019), *vacated and remanded on other grounds sub.nom.*, *City of Chicago, Illinois v. Fulton,* 592 U.S. 154 (2022).

The term "police or regulatory power" is not defined in the Code, but the legislative history behind §362(b)(4) is instructive:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law, the action is not stayed under the automatic stay.

3

> [former] Paragraph (5) [2] makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), S. Rep. No. 989, 95th Cong., 2d Sess. 52 (1978).  Exceptions under subsection (b) are construed narrowly "to give the automatic stay its intended broad application".  *Fulton*, 926 F.3d at 927 (quoting *In re Grede Foundries, Inc.*, 651 F.3d 786,790 (7th Cir. 2011)).  Both the language of §362(b)(4) and its legislative history make clear that, while the *enforcement of a money judgment* does not fall under this exception, the enforcement of a judgment other than a money judgment and a proceeding to *fix damages* do fall under the exception and are not stayed. (…"up to the moment when liability is definitely fixed by entry of judgment, the government is acting in its police or regulatory capacity…once liability is fixed and a money judgment has been entered, the government necessarily acts only to vindicate its own interest in collecting its judgment…[i]t is therefore no longer acting in its 'police or regulatory' capacity…") *S.E.C. v. Brennan*, 230 F.3d 65, 72-73 (2nd Cir. 2000); *In re Phillips*, 368 B.R. 733, 741 (Bankr. N. D. Ind. 2007).

### *The Pecuniary Purpose and Public Policy Tests*

Courts apply both the "pecuniary purpose" and the "public policy" tests to determine whether the government action falls within its police or regulatory power. The action falls within the exception if either of these tests is met. *Fulton*, 926 F.3d at 929.

The pecuniary purpose test looks at the effect of the government action. If the attempted government action is primarily focused on protecting the government's pecuniary interest in the debtor's property and results in an economic advantage

---

[2] Former paragraph(b)(4) excepted from the automatic stay the commencement or continuation of proceedings by a governmental unit to enforce police or regulatory powers. Former paragraph (b)(5) excepted the enforcement of a judgment other than a money judgment, obtained in such an action to enforce its police or regulatory powers.  The two paragraphs were deleted and were replaced by the current paragraph (b)(4).  Omnibus Government Spending Bill (P.L. No. 105-277, October 21, 1998).

4

over third parties in relation to the debtor's bankruptcy estate, the exception does not apply and the action is stayed *Id.* at 929-930. The public policy test considers whether the government action is principally to effectuate public policy or to adjudicate private rights. Those actions that adjudicate private rights are not excepted from the stay. *Id.* at 930.

### *The State's Action Does Not Further Its Pecuniary Interest*

The *subpoena duces tecum* reissued on January was issued pursuant to the Commissioner's, and hence, the State's, statutory authority to conduct investigations and seek the production of records. Ind. Code §23-19-6-2(a) and (b).[3] As intimated by the investigator's letter that accompanied the subpoena, the investigation is in its early stages and it is unknown at this point whether the Debtor is even liable for violations of the IUSA, let alone whether the possible violations are civil or criminal. With no determination of liability, it has not been established that the State holds a "claim" against the Debtor. [4]

The stage of the State's investigation and the State's actions here differ markedly from the facts of the cases cited by the Debtor which involved governmental units that not only held claims against the debtor but attempted to collect on those claims from or assert control over property of the bankruptcy estate. See, *Fulton*, 926 F.3d at 920 (City of Chicago refused to release vehicle of chapter 13 debtor under municipal code that allowed it to impound vehicle, obtain a possessory lien in the vehicle, and assess towing, storage and the City's collection costs); *Cash*

---

[3] The Commissioner may conduct public or private investigations considered necessary to determine whether a person has violated the IUSA under Ind. Code §23-19-6-2(a). The Commissioner's investigative powers include requiring production of any records considered relevant or material to the investigation under Ind. Code §23-19-6-2(b).

[4] The definition of a "claim" under §101(5) is " a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured": or "a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured."
.

5

*Currency,* 762 F.2d at 555 (Illinois Director of Financial Institutions instituted post petition liquidation proceedings against debtor currency exchanges after they had been placed under administrative receiverships pre petition); *In re Ellis*, 66 B.R. 821, 827  (N.D. Ill. 1986); (Illinois State Department of Public Aid that objected to confirmation of the debtor's chapter 13 plan filed post petition action in state court to recover pre-petition overpayment of public assistance benefits); *In re Mewborn*, 367 B.R. 529, 532  (Bankr. D. N. J. 2006) (New Jersey Department of Labor and Workforce Development that filed a proof of claim in the debtor's bankruptcy case intercepted post petition unemployment compensation benefits and applied them to overpayment of benefits that the debtor fraudulently received seven years before); *Brennan*, 230 F.3d at 69 (S.E.C. obtained post petition "repatriation order" in district court ordering the debtor to deposit assets held in an offshore trust into the court's registry).

  The governmental unit's conduct in each of these cases was held not to be an exercise of its police or regulatory powers and thus was stayed.  It was decidedly pecuniary in nature as it went beyond  a determination of liability or the fixing of damages.  The relief sought could have been pursued in bankruptcy court, reinforcing the notion that the action conflicted with the bankruptcy court's control over property of the estate.  See, *Ellis*, 66 B.R. at 828(noting that the Department could have contested the feasibility of the debtor's chapter 13 plan, appealed the denial of its objection to confirmation, or moved to revoke confirmation on the basis of fraud, but that the Department "pursued none of these options.  Instead, it attempted to advance its pecuniary interest by circumventing federal bankruptcy jurisdiction.); *Brennan*, 230 F.3d at 75 ("…it is undisputed that the type of relief sought by the  S.E.C. is available through the Bankruptcy Court; indeed, the . trustee (with the support of the S.E.C.) tried, but failed, to obtain an order from the Bankruptcy Court requiring repatriation of the [trust]").

  The State's action here does not come close to interfering with the Court's control over property of the estate or advancing the State's pecuniary interest, because it has not been determined that the Debtor is liable under the IUSA and

6

whether the State even has a pecuniary interest. It is not possible in this early stage of the investigation for the State to fix damages, let alone collect them. If the investigation results in a finding that the Debtor violated the IUSA and is civilly liable, any action taken by the State in the exercise of its regulatory power short of collection remains protected under §362(b)(4). See, *In re Friedman*, 531 B.R. 741, 746 ((Bankr. N. D. Ill. 2015) (administrative proceeding that resulted in order issued by the Illinois Secretary of State finding that the debtor violated Illinois securities laws fit "squarely within the Section 362(b)(4) exception" as §362(b)(4) allows for the *entry* of judgment); *In re Phillips*, 368 B.R. at 741 (City of South Bend that charged fines to cover its expenses recoverable under property maintenance codes did not violate the stay as fines were not money judgments but rather were the costs of reimbursing the City for cleanup).

The Debtor points to the civil relief available to the State under the IUSA [5] to make the point that the State's action is pecuniary in nature which conflicts with the Bankruptcy Court's control over the property of the estate. The Debtor in his reply suggests that the State could have sought a remedy in the Bankruptcy Court by conducting a Bankruptcy Rule 2004 examination to investigate civil matters had it filed a claim. (Dkt. 41, p.8, n 4). But the point of the investigation is to determine first whether the Debtor is liable and second, whether the liability is civil or criminal. The scope of a Rule 2004 examination is limited to the acts, conduct or property or to the liabilities and financial condition of the debtor or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. Fed. R. Bankr. P. 2004(b). Without a determination that it in fact holds a "claim", let alone a potentially nondischargeable claim, a Rule 2004 exam at this juncture would not aid the State.

Any potential *subsequent* action taken by the State (which it cannot take until liability is determined upon completion of the investigation) such as seeking

---

[5] See, Ind. Code §23-19-6-4(d)(civil penalty of $10,000 for each IUSA violation); Ind. Code §23-19-6-4(a) (State can obtain an order of restitution and disgorgement); Ind. Code §23-19-6-3(a) and (b) (State can file action in state court to obtain injunctive relief, attach the debtor's assets, and appoint a receiver or conservator.)

7

injunctive relief, restitution, or civil monetary penalties, falls within the § 362(b)(4) exception as long as there is no attempt to collect upon any established liability. Besides, the State acknowledges that if it is determined that the Debtor's alleged IUSA violations are civil in nature and thus it indeed holds a "claim", its enforcement options are limited. The State has failed to file a proof of claim or a nondischargeability complaint under the fraud provisions of §523(c) and those filing deadlines have passed.  Thus, the State admits that the Debtor "may well be correct that his proffered injunctive relief is the only remedy available".  (Surreply, Dkt. 44, p. 3).

The Debtor also argues that the costs of defending against the investigation will divert his future earnings which are property of the bankruptcy estate under §1306(a). (Reply, Dkt. 41, p. 5). Post petition earnings are property of the estate under §1306(a).  However, the Debtor's chapter 13 plan is confirmed and confirmation vests all of the property of the estate in the debtor under §1327(b) unless otherwise stated.  The Seventh Circuit has interpreted §1306(a) and §1327(b) together to mean that property of the estate post confirmation is limited to that property which is necessary to the fulfillment of the plan and the remainder of the property under the debtor's control is returned to the debtor.  *Matter of Heath*, 115 F.3d 521, 524 (7th Cir. 1997).  So, to the extent the Debtor has property that is not necessary to the fulfillment of the plan, paying for a defense may not implicate "property of the estate". The focus of the "pecuniary purpose" test is whether the *State* is protecting its pecuniary interest in the debtor's property which results in an economic advantage over third parties in relation to the debtor's bankruptcy estate. The *State's* actions here do not fit that bill.  The possibility that the *Debtor* may have to pay the cost of legal representation from future wages – some of which may not be property of the estate – is too attenuated a connection to deem the *State's* actions pecuniary.  The Court concludes that the State's action is not focused on protecting its pecuniary interest.

8

### *The State's Actions Effectuate Public Policy*

The Debtor argues that the State's action does not satisfy the public policy test because there simply is no conduct to prevent or stop here.  The Debtor has not been in the financial advisor business since April 2022 and agrees to an injunction preventing him from working in that business in the future.  Hence, the investigation will not prevent or stop an ongoing IUSA violation and thus serves no public purpose.

 The IUSA at its core is geared to protect Indiana investors from unscrupulous financial advisors and fraudulent investment practices.  Its stated objectives are to prohibit fraudulent and deceptive conduct in providing investment advice.[6], assure sufficient and reliable disclosure of information to aid  investors in the exercise of independent judgment [7], and establish qualifications for brokers and investment advisers. [8]

It is replete with provisions that make it clear that its purpose to  protect investors and deter wrongdoers is in the public interest.  For example, the IUSA gives the Commissioner the authority to "conduct public or private investigations" that the Commissioner considers necessary [9] ;  publish a record concerning an investigation if the Commissioner determines it is necessary or appropriate in the public interest and for the protection of investors [10]; allows the Commissioner to issue cease and desist orders if the Commissioner determines it to be in the public interest [11]; adopts rules if the Commissioner finds that the rule is necessary or appropriate in the public interest [12]; requires that hearings in administrative proceedings under the IUSA must be conducted in public unless the Commissioner finds a statutory basis that would allow the hearing to be closed to the public [13];

---

[6] Ind. Code §23-19-5-2 and 23-19-6-1(l)(1)
[7] Ind. Code §23-19-6-1(l)(2)
[8] Ind. Code §23-19-6-1(i)(3)
[9] Ind. Code §23-19-6-2(a)(1)
[10] Ind. Code §23-19-6-2(a)(3)
[11] Ind. Code §23-19-6-4(a)(1)
[12] Ind. Code §23-19-6-5(b)
[13] Ind. Code §23-19-6-5(f)

9

requires the Commissioner to make all rules, forms, interpretive opinions and orders available to the public.[14] ; and sets out general policies regarding cooperation with other agencies, including the S.E.C., that must be taken into consideration in carrying out the public interest [15]. Enforcement of securities laws --short of enforcement of a money judgment – is routinely determined to be within the public interest.  See, *In re Wyly*, 526 B.R. 194, 201 (Bankr. N. D. Tex. 2015) ("[t]he SEC acts in the public interest by attempting to show that [the debtor] received funds derived from securities fraud…"). *Brennan*, 230 F.3d at 71.

The $10,000 civil penalty under the statute does not change its public policy focus.  Half of the penalties collected are deposited into the State's general fund and the State estimates that these penalties, together with *all other fines and penalties collected by the State*, comprise about one half of a percent of the Indiana 's operating budget. (Response, Dkt. 33, p. 19).  *Cf, Fulton*, 925 F.3d at 930 (fines, forfeitures and penalties from parking tickets constituted nine percent of the City's annual operating fund).  The other half is used to provide funds for enforcement of the IUSA and for grants to nonprofit entities used to promote investor education.  Unlike the municipal parking ordinance in *Fulton*, the IUSA is not revenue-driven.  The Court again emphasizes the early stage of the investigation.  It is difficult to see how the State's actions here adjudicate private rights when no private liability has been established.

The State's actions, at this early stage, are not pecuniary in nature and effectuate public policy. They therefore come within the State's police and regulatory power and thus are excepted from the stay under §362(b)(4).

# # #

---

[14] Ind. Code §23-19-6-6(b)
[15] Ind. Code §23-19-6-8(b)